**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EAKIN ENTERPRISES, INC., | 1:11-CV-02008-LJO-SKO |
| Plaintiff, | **ORDER DENYING WITHOUT PREJUDICE SPECIALTY'S MOTION FOR SUMMARY JUDGMENT AND EAKIN ENTERPRISES' REQUEST FOR A STAY (DOC. 43)** |
| v. | |
| SPECIALTY SALES LLC, | |
| Defendant. | |

**I. <u>INTRODUCTION</u>**

This is a patent infringement case brought by Eakin Enterprises, Inc. ("Eakin Enterprises") against Specialty Sales LLC ("Specialty"). Eakin Enterprises' first amended complaint ("FAC") alleges infringement of U.S. Patent No. 7,987,820 ("the '820 Patent"), a violation of the Clayton Act, and violations of California's Unfair Practices Act and Unfair Competition Law. Specialty has filed a counter claim against Eakin Enterprises and its President and Chief Executive Officer John W. Eakin ("Mr. Eakin"). Doc. 41. In the instant motion, Specialty seeks to dismiss Eakin Enterprises' patent infringement claim for failure to state a claim. Doc. 43. In the alternative, Specialty seeks partial summary judgment as to the patent infringement claim as well as on Specialty's own counterclaim for a declaratory judgment that the '820 Patent is invalid. *Id*. Eakin Enterprises filed an opposition, Doc. 45, to which Specialty replied, Doc. 48. The motion was originally set for hearing on June 7, 2012, but the hearing was vacated by an order that also requested supplemental filings. Doc. 49. On June 8, 2012, Eakin Enterprises filed the requested declaration of Mr. Eakin. Doc. 50. Specialty filed objections on June 13, 2012. Doc. 53. The matter was then submitted for decision on the papers pursuant to Local Rule 230(g).

## II. BACKGROUND

**A.      Facts.**

Eakin Enterprises manufactures and licenses the use of a cattle foot-bath system that is covered by the '820 patent. Doc. 41, First Amended Complaint ("FAC"), at ¶ 8. The product and system applies formaldehyde to dairy cattle's feet before they are moved into milking parlors in order to prevent hoof diseases and contamination of the work area. *Id*. Specifically, the product and system is designed to provide a precise and safe means of measuring and distributing formaldehyde into the foot-bath. *Id.* Generally, Eakin Enterprises provides the equipment to the farmer or rancher, with the understanding that the formaldehyde solution used in the system will be purchased from Eakin Enterprises. *Id.*

Eakin Enterprises alleges that Specialty manufactures, uses, sells and offers to sell, or provides for use, a cattle foot-bath system that infringes on one or more claims of the '820 patent. *Id.* at ¶¶ 9, 11-16. Eakin Enterprises further alleges that Specialty offers formaldehyde solutions to farmers and ranchers at prices substantially below market value and that the low pricing causes Eakin Enterprises' customers to switch to Specialty's cattle foot-bath system. *Id.* at ¶ 10, 17-19. In addition, Eakin Enterprises alleges that Specialty's sale of formaldehyde is tied to the customers continuing use of Specialty's cattle foot-bath system. *Id.*

**B.      Procedural History.**

On September 23, 2011, Eakin Enterprises filed a complaint against Specialty in the U.S. District Court for the Eastern District of Washington. Doc. 1. Specialty's motion to transfer the matter to this Court was granted. Docs. 5 & 16. Once the case was transferred, Specialty filed an answer containing counterclaims for declaratory relief that: (1) Specialty had not infringed the '820 patent (against Eakin Enterprises); (2) the '820 patent is invalid (against Eakin Enterprises); and (3) the '820 patent is unenforceable (against Eakin Enterprises and Mr. Eakin). Doc. 30. Specialty also included a counterclaim for unfair competition, in violation of Cal. Bus. & Prof. Code § 17200 (against Eakin

Enterprises). Doc. 30. Eakin Enterprises and Mr. Eakin answered Specialty's counterclaims. Doc. 32.

On April 16, 2012, Eakin Enterprises filed its FAC, which alleges the following claims for relief against Specialty: (1) infringement of the '820 patent; (2) attempt to monopolize the industry, in violation of the Clayton Act; (3) violations of California's Unfair Practices Act, Cal. Bus. & Prof. Code § 17000, *et seq*.; and (4) violations of California's Unfair Competition law, Cal. Bus. & Prof. Code § 17200, *et seq*. Doc. 41. On April 26, 2012, Specialty filed the instant motion. Doc. 43.

### III. LEGAL STANDARDS

**A.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

1    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

2   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

3   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

4   *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing]

5   to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true."

6
7   *Iqbal*, 129 S. Ct. at 1951. A court should "dismiss any claim that, even when construed in the light most

8   favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student

9   Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint ...

10  must contain either direct or inferential allegations respecting all the material elements necessary to

11  sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the

12  pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to

13  amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247

14  (9th Cir. 1990) (citations omitted).

15

16  **B.      Motion for Partial Summary Judgment.**

17         Fed. R. Civ. P. 56(a) permits a party to move for summary judgment on a claim or defense or a

18  party of any claim or defense. Summary judgment is appropriate when "there is no genuine dispute as

19  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

20  The moving party bears the initial burden of "informing the district court of the basis for its motion,

21  and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

22  on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

23  of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks

24  omitted). A fact is material if it could affect the outcome of the suit under the governing substantive

25  law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby,

26
27  Inc.*, 477 U.S. 242, 248 (1986).

28
                                                     4

1  If the moving party would bear the burden of proof on an issue at trial, that party must

2  "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."

3  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving

4  party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that

5  there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party

6  meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material

7  facts by either:

8

9  (A) citing to particular parts of materials in the record, including depositions,
   documents, electronically stored information, affidavits or declarations, stipulations

10  (including those made for purposes of the motion only), admissions, interrogatory
    answers, or other materials; or

11

12  (B) showing that the materials cited do not establish the absence or presence of a
    genuine dispute, or that an adverse party cannot produce admissible evidence to support

13  the fact.

14  Fed. R. Civ. P. 56(c).

15  In ruling on a motion for summary judgment, a court does not make credibility determinations

16  or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be

17  believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may

18  be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory,

19  speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

20  defeat summary judgment." *Soremekun*, 509 F.3d at 984.

21

22  **IV. DISCUSSION**

23  **A.      Request for Judicial Notice.**

24  Pursuant to Fed. R. Evid. 201, Specialty requests judicial notice of the April 3, 2012 joint

25  scheduling report, Doc. 35, as well as documents from the United States Patent and Trademark Office's

26  ("USPTO") files regarding the '820 patent. *See* Specialty's Request for Judicial Notice ("SRJN"), Doc.

27

28

1   43-2.

2      "Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ.

3   P. 12(b)(6) motion." *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir.

4   2007). "However, a court may take judicial notice of matters of public record without converting a

5   motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to

6   reasonable dispute." *Id.* (internal quotation marks and citations omitted).  This includes a court's own

7   records. *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011) (recognizing that a

8   court may take judicial notice of its own records in other cases). Accordingly, Specialty's request for

9

10  judicial notice of the joint scheduling report is GRANTED.[1]

11     With regard to the USPTO files, Specialty requests judicial notice of: (1) the "petition for claim

12  of domestic priority in patent after issuance under 37 CFR 1.182," Doc. 43-4, and (2) the "decision on

13  petition under 37 CFR 1.78(a)(6)," Doc. 43-5. Specialty also requests judicial notice of the full file

14  history of the reissue application, serial number 13/385,815. Doc. 43-6. Because "[j]udicial notice of

15

16  matters of public record, including administrative records and procedures, are appropriate pursuant to

17  [Fed. R. Evid. 201]," *Coinstar, Inc. v. Coinbank Automated Sys., Inc.*, 998 F. Supp. 1109, 1114 (N.D.

18  Cal. 1998) (granting defendant's request for judicial notice of two patents and documents from the file

19  history of one of the patents), Specialty's request for judicial notice of the specified documents is

20  GRANTED.

21

22  **B.      Validity of the '820 Patent.**

23     Specialty moves to dismiss Eakin Enterprises' patent infringement claim. In the alternative,

24  Specialty seeks partial summary judgment on that claim and on Specialty's own counterclaim that the

25

26  patent is invalid.

27  [1] Judicial notice may be taken only of the existence of the report and the statements it contains, not of the truth of the facts recited therein. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 689-90  (9th Cir. 2001) (holding that the district court properly took judicial notice of the fact that a waiver was signed in a prior proceeding but incorrectly took judicial notice of the validity of the waiver, a disputed fact yet unproved).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The parties have presented matters outside the pleadings. Although a court may consider matters of judicial notice without converting a motion to dismiss into a motion for summary judgment, *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003), Eakin Enterprises has presented declarations in an attempt to clarify and/or supplement the factual record. A court, in its discretion, may consider matters outside the pleadings; but if it does so, the motion must be converted to one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to respond to the extra-record material. Fed. R. Civ. P. 12(d); *see also United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."). Here, both parties have had the opportunity to present relevant evidence that will aid in the resolution of the present dispute. Accordingly, it is appropriate to proceed with Specialty's alternative motion for summary judgment in lieu of its motion to dismiss.

### 1.     General Legal Framework.

Specialty's central argument is that the '820 Patent is invalid in light of the "on-sale bar" set forth in 35 U.S.C. § 102(b), which provides that "[a] person shall be entitled to a patent unless":

> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....

When an application is filed, the filing date normally becomes the invention's "priority date." The date twelve months prior is considered the invention's "critical date." *See generally, Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, 507 F. Supp. 2d 883, 888 (N.D. Ill. 2007), *aff'd*, 595 F.3d 1340 (Fed. Cir. 2010). If any "public use or ... sale" occurred before the critical date, the patent is invalid.

In the United States, applicants may choose to file a provisional patent application prior to the filing of the final application. In such a case, the priority date for the full application is back-dated to

7

1  the filing date of the provisional filing, so long as the full Application "is filed not later than 12 months

2  after the date on which the provisional application was filed and if it contains or is amended to contain

3  a specific reference to the provisional application." 35 U.S.C. § 119(e)(1). However, "no application

4  shall be entitled to the benefit of an earlier filed provisional application under this subsection unless an

5  amendment containing the specific reference to the earlier filed provisional application is submitted at

6  such time during the pendency of the application...." *Id*.

7

8       It is undisputed that Eakin Enterprises filed a provisional application on November 21, 2007,

9  which would have set November 21, 2006 as the "critical date" before which the invention could not

10 have been in public use or on sale. *See* Doc. 46 at ¶ 2. However, it is also undisputed that Eakin

11 Enterprises did not properly reference the provisional application in its final patent application filed one

12 year later, on November 21, 2008.[2] *Id*. The '820 Patent issued without reference to the provisional

13 application. *Id*. at ¶ 3. Shortly after discovery of the omission, Plaintiff filed a petition with the USPTO

14 to correct the '820 Patent. *Id*. at ¶ 4. The petition was denied, but the USPTO instructed Plaintiff to file

15 a "reissue application" for the '820 Patent to correct the situation. *Id*. That application was filed March

16 6, 2012 and is currently pending before the USPDO. *Id*. Nevertheless, because of this error, the current

17 '820 Patent does not permit Eakin Enterprises to take advantage of the provisional application's priority

18 date of November 21, 2006. Instead, the relevant priority date is November 21, 2007. *Id*.

19

20      The key issue here is whether the on-sale bar was triggered by a "public use or sale." 35 U.S.C.

21 § 102(b). It appears that the parties are in agreement that the trigger in this case, if any occurred, was by

22 sale not by "public use."[3] Whether a "sale" has occurred for purposes of the on-sale bar is subject to a

23 two-part test: (1) "the product must be the subject of a commercial offer for sale"; and (2) "the

24

25

26 [2] The Patent Application did reference the provisional patent date; however, it contained a typographical error in the serial number of the referenced provisional patent application. Doc. 46 at ¶2.

27 [3] The term public use "includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor." *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co*., 298 F.3d 1290, 1297 (Fed. Cir. 2002).

28

invention must be ready for patenting." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998).

To satisfy the first *Pfaff* factor, commercial offer, an offer "must be sufficiently definite that another party could make a binding contract by simple acceptance, assuming consideration." *Id.*

> The law has long recognized a distinction between experimental usage and commercial exploitation of an invention. While "[a]ny attempt to use [an invention] for profit ... would deprive the inventor of his right to a patent," an inventor's use "by way of experiment" does not bar patentability. Elizabeth, 97 U.S. at 137, 24 L.Ed. 1000 (1877). Therefore, we must consider whether the suspect activities were experiments as opposed to an attempt to profit from the invention, that is, whether the primary purpose of the offers and sales was to conduct experimentation. Allen Eng'g Corp. v. Bartell Indus., 299 F.3d 1336, 1354 (Fed.Cir.2002). Neither profit, revenue, nor even an actual sale is required for the use to be a commercial offer under section 102(b)—an attempt to sell is sufficient if it rises to an offer upon which a contract can be made merely by accepting it.

*Id.*

The "ready for patenting" prong may be met in at least two ways: "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67-68; *see also Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1366 (Fed. Cir. 2008).

The ultimate determination of whether an invention was on sale under 35 U.S.C. § 102(b) is a question of law. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). "This legal determination is, however, based on underlying issues of fact." *Id*.

**2.      Evidence Pertaining to Validity of the '820 Patent.**

Every patent issued by the USPTO is presumed valid pursuant to 35 U.S.C. § 282. However, this presumption may be overcome by evidence of invalidity. The presumption operates as "a procedural device which places on a party asserting invalidity the initial burden of going forward to establish a prima facie case on that issue." *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984). While "the burden of persuasion on the issue of invalidity also rests throughout the

9

litigation with the party asserting invalidity," *id.*, if evidence is presented establishing a prima facie

case of invalidity, the opponent of invalidity must come forward with evidence to counter the prima

facie challenge to the presumption of § 282, *Cable Elec. Products, Inc. v. Genmark, Inc.,* 770 F.2d

1015, 1022 (Fed. Cir. 1985), overruled on other grounds, *Midwest Indus., Inc. v. Karavan Trailers,*

*Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

Specialty asserts that Plaintiff has admitted to facts that establish the '820 Patent is invalid.

Specialty first points to the April 10, 2012 Joint Scheduling Report, which stated: "As issued, the '820

patent has a critical date of November 21, 2007 and, unless reissued based on the domestic priority date

of the provisional application, which is November 21, 2006, will be invalid under 3 U.S.C § 102(b)."

Doc. 35 at ¶ 14. Specialty suggests that this "admission" was likely made by Plaintiff's counsel based

on Plaintiff's own "triggering actions," such as sales of Plaintiff's foot-bath systems prior to the critical

date of November 21, 2007. Doc 48 at 1.

Specialty supports its theory of admission by arguing that Plaintiff's conduct has been

consistent with invalidity. First, Specialty points to the reissue application for the '820 Patent, filed

with the USPTO on March 3, 2012. Reissue is available under 35 U.S.C. § 251 "whenever any patent

is, through error without any deceptive intention, deemed wholly or partially inoperative or invalid by

reason of a defective specification or drawing, or by reason of the patentee claiming more or less than

he had a right to claim in the patent...." Probably in light of this standard, the reissue application for the

'820 patent stated: "An error occurred in the issuance of the above reference[d] patent in which proper

reference to a claim for 35 U.S.C. § 120 benefit of domestic priority in the patent was omitted, and

patentee believes this error renders the original patent wholly or partially inoperative or invalid." SRJN,

Ex. D. The '820 Patent owner, Mr. Eakin, also submitted a declaration dated April 6, 2012, stating: "As

a basis for reissue, the applicant believes the original patent to be wholly or partially inoperative or

1   invalid, by reason that priority under 35 U.S.C. §119(e) to Provisional Application No 60/004,125, was

2   not listed on the face of the issued Patent." SRJN, Ex. C.

3

4          **3.**         **Svendsen Declaration.**

5          In response, Plaintiff's counsel, Chris E. Svendsen, filed a declaration indicating that "a review

6   of the files and records of Eakin Enterprises discloses that the first installation of a cattle footbath

7   incorporating the invention claimed in the '820 Patent was <u>December 20, 2007</u>," which is after the

8   critical date. Doc. 46 at ¶9 (emphasis added). Specialty objects to the Svendsen Declaration on several

9   grounds.

10

11             **a.**        **Judicial Estoppel.**

12          First, Specialty asserts that Plaintiff is judicially estopped from changing its position on the date

13   of the first triggering action. This objection is misplaced. "Judicial estoppel is an equitable doctrine that

14   precludes a party from gaining an advantage by asserting one position, and then later seeking an

15   advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d

16   778, 782 (9th Cir. 2001). Critically, the Ninth Circuit has "restricted the application of judicial estoppel

17   to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Id.* (internal

18   citation omitted). Here, although the prior inconsistent position was articulated in the Joint Scheduling

19   Report, a document filed in this case, this Court has not relied upon Plaintiff's counsel's statement in

20   the Joint Report.[4] No substantive rulings have been issued in this case having any bearing, let alone

21   reliance, upon the statement in question. Judicial estoppel does not apply here.

22

23

24             **b.**        **Evidentiary Objections.**

25

26   [4] Even if the USPTO had relied upon or adopted Eakin Enterprises' prior position suggesting that the on-sale bar rendered

27   the '820 patent invalid, judicial estoppel does not apply where the prior inconsistent position was advanced in proceedings
before an administrative agency. The prior proceeding must be "judicial" in nature. *Devon Indus., Inc. v. Am. Med. Int'l Inc.*,
61 F.3d 910 (9th Cir. 1995) (finding patent application did not qualify as prior judicial proceeding).

28

1

2       Specialty next objects that the statements made in paragraph nine of the Svendsen Declaration

3   lack foundation, are conclusory, are hearsay, and are based on hearsay. Doc. 48 at 2. The first objection

4   is a valid one. Mr. Svendsen does not indicate that his declaration is based upon personal knowledge.

5   The objection to this paragraph of the Svendsen declaration is SUSTAINED.

6       **4.      Eakin Declaration.**

7       In response to this objection, and at the Court's request, Doc. 49 at 2, Plaintiff also submitted

8   the declaration of Mr. Eakin, who explains that he developed more than one version of a cattle foot-

9
    bath system. In general, he identified safety and efficacy issues in connection with "dairy operators
10
    using open buckets and hoses to transport and measure concentrated formaldehyde into cattle foot-
11
    baths," by "exposing workers to contact with concentrated formaldehyde solution" and because "open
12
13  bucket transfer of formaldehyde to the foot-baths ... created vapors and easily splashed into the

14  operator's face." Doc. 50 at ¶2. He then went about developing a prototype foot-bath system by using a

15  "roto-molded type of metering box ... to eliminate the problem of open containment of formaldehyde."

16
    *Id*. at ¶ 3. He considered "various ways to connect the metering box to a formaldehyde tote and to duct
17
    it into a cattle footbath, and then use it to mix the needed concentrations of formaldehyde with water
18
19  repeatedly, and without generating vapors or splashes." *Id*. His first prototype was placed on display at

20  a Dairy Show from November 8 through November 10, 2007, <u>before</u> the critical date. However, an

21  attendee commented that the prototype "leaked vapor and liquid formaldehyde from a 'check-valve'

22  vent in the top of the ... metering box." *Id*. at ¶ 4. After the show, Mr. Eakin removed the check valve

23  and installed a "vent pipe" instead. It was this, second version of the system that was disclosed in the

24  patent as the preferred embodiment." *Id*.; *see* Doc. 1-1 ('820 Patent), column 2, line 61.

25

26      **5.      Evidentiary Objections**

27      Specialty objects to two specific portions of the Eakin Declaration:

28

- Paragraph 5, page 3, lines 15-17, which states: "With the improved venting configuration, in December of 2007, the first fully functional field installation of the Cattle Foot-Bath System was made."

- Paragraph 6, page 3, lines 23 through page 7, line 2, which states: "The first public use of the invention occurred with the first fully functional installation of our Cattle Foot-Bath System incorporating my invention as claimed in the '820 Patent and using the vented return from the day tank in December 2007 to a long-time customer of mine for formaldehyde, and according to our delivery records and my recollection, this was the first installation of the fully functional Cattle-Foot-Bath system."

Specialty maintains both statements are conclusory and lack foundation. Neither objection is well-founded. These statements are in no way conclusory, and Specialty does not explain why the inventor would not have sufficient personal knowledge of the relevant facts to provide adequate foundation for them. These objections are OVERRULED.

Specialty also argues that the second statement is inadmissible hearsay. To understand this objection, it is necessary to examine the statement in context. The entirety of paragraph 6 states:

> Sales records were not kept by Eakin Enterprises, Inc. of initial installations of the cattle foot-baths incorporating my invention as claimed in the '820 Patent, due to the fact that these systems were not sold, but only loaned to formaldehyde purchasers. Only after a customer tried to keep a system, after discontinuing formaldehyde purchase, did Eakin Enterprises, Inc. begin including a description of the loaned system on formaldehyde sales invoices. The first public use of the invention occurred with the first fully functional installation of our Cattle Foot-Bath System incorporating my invention as claimed in the '820 Patent and using the vented return from the day-tank in December of 2007 to a long-time customer of mine for formaldehyde, and according to our delivery records and my recollection, this was the first installation of the fully functional Cattle Foot-Bath System.

Doc. 50 at ¶ 6. Specialty argues that this is hearsay because Mr. Eakin admits that sales records were not kept of "initial installations," while at the same time asserting Eakin Enterprises began including a description of the loaned system on later sales invoices and maintained some delivery records.

Specialty does not explain why this variable record-keeping system renders the delivery records hearsay. If anything, inconsistent maintenance of records would go to weight not admissibility. Specialty's hearsay objections are OVERRULED.

Finally, Specialty maintains that both statements are irrelevant because whether the alleged December 2007 installation displayed the additional feature of a "vented" return is not relevant to the validity of the '820 Patent. Relevance requires only that the evidence have "any tendency to make a fact more or less probable than it would be without the evidence"; and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the key issue is <u>when</u> a "public use or sale" of the invention took place. Because Mr. Eakin admits a prototype of his device was on display at the Idaho Dairy Show in early November 2007, the entirety of his declaration is relevant to determining whether the prototype could even trigger the on-sale bar in the first place.

> The overriding concern of the on-sale bar is an inventor's attempt to commercialize his invention beyond the statutory term. When the asserted basis of invalidity is an on-sale bar, the court should determine whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention.

*Atlanta Attachment*, 516 F.3d at 1365. If a prototype of an invention contains each element of a claim, it may trigger the on-sale bar if the other elements of the bar are present. *Id*. Conversely, if the prototype does not contain each element of the claim, it cannot trigger the bar. The challenged statements in the Eakin Declaration are relevant to determining whether the on-sale bar applies. Specialty's relevance objection is OVERRULED.

**6.      Invalidity Determination Requires Claim Construction.**

Mr. Eakin asserts that at the Idaho Dairy show, an attendee noticed that the prototype's "check-valve" was leaking vapors. Doc. 50 at ¶ 4. After the show, Mr. Eakin removed the check valve and replaced it with a vent pipe that would permit recycling of the vapors back to the concentrated formaldehyde tank. *Id*. Specialty does not dispute these factual assertions. Instead, Specialty maintains

14

that these facts support application of the on-sale bar. This "vent pipe" improvement was disclosed in the patent application as the "preferred embodiment" of the device, '820 Patent, Col. 2, lines 61-62 ("the cattle foot-bath system preferably includes a vent connecting the day tank to the concentrated medicinal agent this component recycles any vapors emitted form the day-tank, especially during filling, and if the tank is overfilled, the overflow is directed back to the tote-tank of concentrated medicinal agent"). However, the terms "vent," "venting system," or "vented return" were not included in any of the claims of the '820 patent. Specialty maintains, "[t]he patentee has therefore admitted that a full disclosure of the claimed invention, i.e., without the 'vent' improvement, was made at the 2007 Idaho Dairy Show (Nov. 8-10, 2007) prior to the critical date..." Doc. 53 at 3.

Determining whether the prototype on display "met each of the limitations of the claim and thus was an embodiment of the claimed invention," *Atlanta Attachment*, 516 F.3d at 1361, requires construction of the claim. The parties have not briefed the issue of claim construction and have made no attempt to advance the date for a claim construction hearing pursuant to *Markman v. Westview Instruments*, 517 U.S. 370 (1996).[5] Even in the absence of a full *Markman* hearing, additional briefing on the parties' positions regarding the relationship of the "vent pipe" to the claims in the '820 patent would be required. The Court is unable to make the required determinations based upon the present record. In addition, normally, it is not advisable to proceed with the claim construction process until at least some substantive discovery has taken place.

Accordingly, Specialty's motion for summary judgment is DENIED WITHOUT PREJUDICE.

**C.**     **Eakin Enterprises' Request for A Stay.**

If the Court had been inclined to grant Specialty's motion to dismiss or alternative motion for summary judgment, Eakin Enterprises requested a "stay pending reexamination" of the '820 patent. Doc. 45 at 9-10. It is not necessary to address this request because Specialty's motion has been denied.

---

[5] The Scheduling Order sets a *Markman* hearing for November 27, 2012.

1    Even if the Court had been inclined to grant the motion, the issuance of a stay pending a

2  USPTO reexamination or reissue is a decision that must be approached with caution. *Network*

3  *Appliance Inc. v. Sun Microsystems Inc.*, 2008 WL 2168917 (N.D. Cal. May 23, 2008) ("[T]here

4  appears to be a growing concern among at least some judges in this district that, on balance, staying a

5  case even in its early stages pending reexamination has not led to the just, speedy, and efficient

6  management of the litigation, but instead has tended to prolong it without achieving sufficient benefits

7  in simplification to justify the delay. This concern stems in part from the unpredictable but often

8

9  lengthy duration of the stay due to the length of PTO reexamination proceedings...."). According to

10 information presented by Specialty's counsel, the average pendency of a re-issue application is just

11 under five years. *See* Doc. 48-4, Ex. D. Plaintiff's two-page request for a stay (incorporated into its

12

13 opposition) does not thoroughly address the potential prejudice Specialty believes a stay may cause. If

14 Plaintiff is serious about obtaining a stay in this matter pending resolution of its reissue application

15 before the USPTO, Plaintiff is instructed to file a properly noticed motion for a stay that thoroughly

16 justifies the request. Accordingly, Plaintiff's request for a stay is DENIED WITHOUT PREJUDICE.

17

18                          **V. CONCLUSION AND ORDER**

19      For the reasons set forth above:

20      (1) Specialty's alternative motion for summary judgment on the patent infringement claim and

21 patent invalidity counterclaim is DENIED WITHOUT PREJUDICE; and

22      (2) Eakin Enterprises' motion for a stay is DENIED WITHOUT PREJUDICE.

23

24
SO ORDERED
25 Dated:  June 25, 2012
                                        /s/ Lawrence J. O'Neill
26                                      United States District Judge

27

28
                                        16